# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 1:11-CR-99 |
| Plaintiff, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING |
| RODNEY RIDDLE, | : | DEFENDANT'S MOTION TO |
| | : | WITHDRAW GUILTY PLEA |
| Defendant. | : | |

This matter comes before the Court on the Motion of Rodney Riddle to Withdraw Guilty Plea. (Doc. 34.) The Court held a status conference on Defendant's motion on April 5, 2012 and a hearing on the motion on April 11, 2012. After careful consideration of the parties' arguments and of the record, the Court **DENIES** Defendant's motion.

## I.    BACKGROUND

On or about August 3, 2011, a federal grand jury indicted Defendant Riddle with two counts of mail fraud affecting a financial institution, in violation of 18 U.S.C. § 1341 (Counts 1 and 2), two counts of wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343 (Counts 3 and 4), and one count of bank fraud, in violation of 18 U.S.C. § 1344 (Count 5), arising from Defendant's alleged involvement with a mortgage fraud scheme. The indictment alleged that during the time period beginning at least as of December 2001 and ending in or around July 2006, Defendant Riddle devised and intended to devise a scheme to defraud various lending institutions, including First Franklin Financial Corporation, a subsidiary of National City Bank, and Fremont Investment & Loan. (Doc. 1.)

Defendant Riddle filed several motions to dismiss the above-described counts on various grounds and a motion to exclude evidence relating to certain statements he made prior to his indictment. In an Order docketed on December 23, 2011, this Court denied all but one of the motions, Riddle's Motion in Limine to Exclude Statements, which the Court granted only in part. (*See* Doc. 23.)

Following the issuance of that order, Riddle entered into renewed plea negotiations with the Government. A signed plea agreement was filed on January 3, 2012, and on January 5, 2012, the Court held a change of plea hearing at which Riddle pleaded guilty to Counts 3 and 5 of the Indictment.[1] During the hearing, the Court placed Riddle under oath and asked him a number of questions to ensure that his change of plea was made voluntarily and with a full understanding of the nature of the charges and the consequences of entering a guilty plea. (*See* Doc. 35 at 6-39.) While under oath, Riddle affirmed that he understood the charges against him, that he believed his attorney to be "fully informed about the facts and circumstances" upon which those charges were based, and that he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by [his] attorney." (*Id.* at 8.) The Court advised Riddle of the consequences of pleading guilty, of the penalties to which he could be subject, and of the process by which the Court would determine an appropriate sentence. (*Id.* at 8-20.) Riddle repeatedly indicated that he understood the sentencing process and consequences of pleading guilty. (*Id.*) During that colloquy, the Court engaged in an in-depth discussion with Riddle regarding the constitutional rights that he would waive by pleading guilty. Riddle initially expressed reservation, raising

---

[1] Riddle's plea agreement may be found at CM/ECF Doc. 30, and the transcript of the Change of Plea Hearing was filed as Doc. 35.

issues that already had been addressed in the Court's December 23, 2011 Order, but then

indicated that he nonetheless wanted to proceed with entering a plea of guilty:

> THE COURT: Then next, Mr. Riddle, I want to talk with you about your constitutional rights.
>
> I want to advise you that under the Constitution and laws of the United States, you have the right to plead not guilty to any offense charged against you and to persist in that plea. You'd have the right to a trial by jury. At that trial, you'd be presumed to be innocent, and the government would have to prove your guilt beyond a reasonable doubt. You'd have the right to the assistance of counsel for your defense appointed by this Court, if necessary, at trial and every other stage of the proceeding. You'd have the right to see and hear all the witnesses and have them cross-examined in your defense. You'd have the right on your own part to decline to testify unless you voluntarily chose to do so in your own defense. You'd have the right to compel the attendance of witnesses to testify in your defense. In other words, you'd have subpoena power. And should you decide not to testify or put on any evidence, those facts could not be used against you.
>
> Do you understand that if you plead guilty, you give up all the rights I've just described? You give up your right to a trial, your right to a jury, all the things I've just enumerated?
>
> THE DEFENDANT: I understand. But I have a question, Your Honor.
>
> THE COURT: Okay.
>
> THE DEFENDANT: The way that this indictment and everything came and even up until this point as we stand now, I spent approximately about a year with the FBI working with them back in '06 and '07. And through the pretrial motions and things that this Court has reviewed, it was allowed that the communications I gave to the FBI during that time that I was working with them be allowed to be used against me if I went to trial. The problem that I have or the problem that has been in my mind as a situation is I would not be able to sit at a trial and say, okay, I'm not guilty, without those testimonies or those words being used against me. And in my mind, it says that I'm testifying against myself because those communications are being allowed to use.
>
> As I stand here now, I understand what you read and the dissertation you have there, but that's the piece that I am most troubled about because I was not given the – just being the way this whole case has developed from '06 to present, the continuation of my work with the FBI and then the indictment being filed last August because I would not work or whatever, and the idea of me standing trial, the – even at the pretrial sentence what was brought forward by the prosecution was predominantly –

MR. SMITH-MONAHAN [Defense Counsel]: What are you about to –

THE DEFENDANT: I'm sorry.

MR. SMITH-MONAHAN: I just want to ask you where you're going with this.

THE DEFENDANT: Just –

THE COURT: Why don't you cover the mike up –

MR. SMITH-MONAHAN: Can we just take a second?

THE COURT: Yeah, sure. Go ahead.
(Mr. Smith-Monahan conferring with the defendant.)

THE DEFENDANT: Your Honor, I'm – I understand, Your Honor.

THE COURT: Okay. Mr. Smith-Monahan has answered your questions, and you do understand that you would – that if you decide to plead not guilty, you would not be giving up any of those rights, but that by pleading guilty, you are giving up all the rights I described?

THE DEFENDANT: I understand. Yes, I understand.

THE COURT: All right. Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with the trial that I just described?

THE DEFENDANT: Yes, Your Honor.

(*Id.* at 17-20.)

The Court then asked the Government to summarize the essential terms of the plea agreement. After the plea agreement was reviewed on the record, Riddle represented that understood the terms and that he had voluntarily decided to enter into the agreement and to change his plea to guilty:

THE COURT: And, Mr. Riddle, did you have an opportunity to read and discuss the plea agreement with Mr. Smith-Monahan before you signed it?

4

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: And does the plea agreement represent in its entirety any understanding you have with the government?

THE DEFENDANT: Yes, Your Honor, it does. Yes. Yes, it does.

* * *

THE COURT: . . . Do you understand the terms of the plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anyone made any promise or assurance that is not in the plea agreement to persuade you to accept this agreement?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you in any way to persuade you to accept this agreement?

THE DEFENDANT: No.

THE COURT: I'm sorry?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. Do you understand that the terms of the plea agreement are merely recommendations to the Court; that the Court can reject the recommendations without permitting you to withdraw your plea of guilty and impose a sentence that is more severe than you may anticipate?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Aside from the plea agreement we've just discussed, has anyone made any promises or assurance of any kind that induced you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Yes.

THE COURT:  Has anyone attempted in any way to force you to plead guilty or otherwise threatened you?

THE DEFENDANT:  No, Your Honor.

(*Id*. at 31-33.)

Approximately two months after the change of plea hearing, the Court received a *pro se* letter from Riddle indicating that he wished to withdraw his plea and describing a strained relationship with his attorney, Richard Smith-Monahan.  On March 5, 2012, the Court held a hearing to address Riddle's letter.  During that hearing, Riddle indicated that he had reached a stalemate with defense counsel in relation to his wish to withdraw his guilty plea.  Mr. Smith-Monahan conceded that they had disagreed over whether Riddle should move to withdraw his plea, but stated that he did not believe there had been an irreparable breakdown of the attorney client relationship.  After Mr. Smith-Monahan agreed to file on Riddle's behalf a motion to withdraw the plea, Riddle indicated that he no longer wished for the appointment of new counsel.

On March 9, 2012, Mr. Smith-Monahan filed Riddle's Motion to Withdraw Guilty Plea, which indicated that in lieu of providing a memorandum in support of the motion, Mr. Smith-Monahan had at Riddle's request attached as Exhibit A an unsworn statement written by Riddle explaining his reasons for moving to withdraw his plea.  (Doc. 34.)  In the attached statement, Riddle cites several bases for the motion, which fall into three main categories: first, Riddle alleges that defense counsel failed to properly review the evidence in this case and pressured him to enter into a plea agreement that he did not fully agree with or understand; second, that by failing to fully review the evidence prior to filing the motions to dismiss discussed above, Riddle's attorney did not include crucial information that may have resulted in a dismissal of the

charges; and third, that certain findings and recommendations in the initial draft presentence report ("PSR") did not comport with his understanding of what would occur when he entered the plea agreement or with his version of the events leading to the charges.

On March 19, 2012, the Government filed an opposition to Riddle's motion. (*See* Doc. 36.) The Government argues that Riddle should not be permitted to withdraw his plea because too much time elapsed between Riddle's change of plea hearing and the date he filed his motion to withdraw the plea; Riddle has not asserted his innocence, but rather has repeatedly acknowledged his guilt; Riddle knowingly chose to plead guilty, as demonstrated by the circumstances surrounding the plea agreement and plea colloquy; and permitting Riddle to withdraw his plea would result in substantial prejudice to the Government.

The court held a hearing on Riddle's motion on April 11, 2012. During that hearing, Riddle, assisted by counsel, made a statement to the Court and submitted two pieces of evidence into the record. The first is the *pro se* letter discussed above (Def. Ex. A), and the second is a statement of facts that Riddle alleges was prepared by an Assistant United States Attorney in 2006 in connection with a plea agreement that was never filed (Def. Ex. B). The Government made a brief statement in response, and the Court indicated that it would take the matter under consideration.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, if "the defendant can show a fair and just reason for requesting the withdrawal." The standard for withdrawal of a plea within the Sixth Circuit is well-settled:

     . . . A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea. When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise. The withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice.

     . . . [Federal Rule of Criminal Procedure 11(d)(2)(B)] is designed to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty. Withdrawal of a plea is appropriate where there is a real confusion or misunderstanding of the terms of the agreement.

*United States v. Ellis*, 470 F.3d 275, 280-81 (6th Cir. 2006) (internal citations and quotations

omitted).

     In determining whether a defendant has met the Rule 11(d)(2)(B) standard in articulating

a reason for withdrawal of the guilty plea, the Court considers a number of factors including but

not limited to the following, hereinafter referred to as the "*Bashara* factors":

     (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (citing *United States v. Bashara*, 27

F.3d 1174, 1181 (6th Cir. 1994), *superseded by statute on other grounds as stated in United*

*States v. Caseslorente*, 220 F.3d 727, 734-35 (6th Cir. 2000)); *see also United States v. Sharp*,

No. 09–4267, 2011 WL 2035905, at *9 (6th Cir. May 25, 2011). No one factor is controlling.

*Ellis*, 470 F.3d at 286. Ultimately, "[t]he permission to withdraw a guilty plea prior to

sentencing is a matter within the broad discretion of the district court." *United States v. Valdez*,

362 F.3d 903, 912 (6th Cir. 2004) (citing *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir. 1988)).

## III.    ANALYSIS

The Court first will address the *Bashara* factors and then will turn to any remaining arguments raised by Riddle to determine whether he has shown a fair and just reason for requesting permission to withdraw his plea.

### A.    Amount of Time Between the Plea and the Motion to Withdraw and Defendant's Reason for the Delay

With regard to the first factor, the amount of time that elapsed between the guilty plea and the motion to withdraw, the Sixth Circuit has stated that "'[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reason for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time.'" *Ellis*, 470 F.3d at 286 (quoting *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.1996)). In this case, Riddle entered his guilty plea on January 5, 2012. On February 28, 2012, the Court received Riddle's *pro se* letter indicating he wished to withdraw his plea, and defense counsel filed a formal motion on Riddle's behalf on March 9, 2012. The Government argues that the approximately sixty-day delay that occurred in this case between the date of Riddle's guilty plea and the date of his first request to withdraw that plea is substantial and should trigger closer scrutiny of Riddle's motion.

Courts have denied motions to withdraw guilty pleas in cases with similar periods of delay. *See United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) ( "The strongest factor supporting the district court's denial of Durham's motion is the length of time between Durham's plea and the filing of his motion to withdraw. Durham waited approximately seventy-seven days

to file his motion after entering his guilty plea."); *Baez*, 87 F.3d at 808 (sixty-seven days); *Goldberg*, 862 F.2d at 104 (fifty-five days); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-five days).

With the length of the delay calling for closer scrutiny, the Court turns next to the second and related factor, the presence or absence of a valid reason for the delay. Riddle attempts to justify the nearly two-month delay by asserting that he wanted to withdraw his plea almost immediately and that he had argued with his attorney about the request prior to actually contacting the Court. The Government casts doubt on that assertion by pointing out that Riddle's request to withdraw his plea was not made until after the release of an initial PSR recommending fifty-one months incarceration.

In the past, the Sixth Circuit has rejected explanations for delay similar to that advanced by Riddle. For example, in *United States v. Owens*, 215 F. App'x 498, 501 (6th Cir. 2007), the defendant argued that the court excuse his four-month delay in filing a formal motion to withdraw his plea because he had told his attorney and the district court within days of pleading guilty that he wanted to change his plea, but his attorney did not file the motion until months later. The defendant complained that the only other thing that he could have done was to file a *pro se* motion, a practice that is generally disfavored by courts when a defendant has counsel. The Sixth Circuit characterized the defendant's argument as "disingenuous" given the fact that the defendant actually had filed *pro se* motions in or around that same time period addressing various issues. *Id.* at 501-02. In another, more recent case, *United States v. Fitzmorris*, 429 F. App'x 455, 458-59 (6th Cir. 2011), the Sixth Circuit found that a district court did not abuse its discretion in denying the defendant's motion to withdraw his plea where the defendant attempted

10

to explain a four-month delay by testifying that he had told his attorney on the evening after entering his guilty pleas that he wanted to withdraw them. Defense counsel acknowledged that the defendant had made that request at some point, but claimed that the defendant had vacillated between reluctance about pleading guilty and willingness to cooperate. *Id.* at 458. The court ultimately found that the defendant delayed filing a motion to withdraw simply because he was unsure whether to pursue that path. In reaching that conclusion, the court noted that the defendant never expressed any wish to withdraw his pleas when meeting with the probation officer and that it was not until after the defendant saw the PSR recommending that thirty-five year sentence that he finally filed a formal motion to withdraw his pleas. *Id.* at 459.

In this case, while Riddle may have expressed regret shortly after entering a guilty plea, that regret alone does not indicate that at the time of his plea Riddle acted with "unsure heart and confused mind," particularly given that Riddle then allowed several weeks to pass before taking any action to notify the Court of his desire to withdraw his plea. *See Bashara*, 27 F.3d at 1181 (finding that a six-week period of delay weighed against the defendant where, despite the fact that only eleven days after pleading guilty the defendant had expressed regret over that decision to his probation officer, the defendant nonetheless allowed six weeks to pass before filing any formal request to withdraw his plea). Ultimately, the Court believes that the timing of Riddle's motion indicates that although he may have struggled with regret over entering a guilty plea, his desire to actually withdraw his plea was not strong enough to prompt him to action until the release of the initial PSR. Indeed, Riddle's basis for seeking withdrawal, as described in the statement attached to his motion, stems at least in part from conclusions that were drawn in that report. In light of the timing of Riddle's letter to the Court and formal motion, the Court finds

that his delay in requesting to withdraw his plea was related to tactical considerations, and therefore weighs against Riddle.

## B.    The Extent of Defendant's Assertions of Innocence

Turning to the third factor, the Court considers the extent to which Riddle has maintained his innocence or admitted guilt during the duration of the proceedings. In this case, Riddle has repeatedly admitted his role in the alleged mortgage fraud scheme. He did so first in 2006 and 2007 during discussions with various federal agents, as described in detail in this Court's December 23, 2011 Order (Doc. 23); he did so again by executing the plea agreement and accompanying statement of facts filed with this Court on January 3, 2012; and finally, he affirmed those admissions while under oath during the January 5, 2012 change of plea hearing. (*See* Docs. 30, 35 at 31-39.)

Even in his motion to withdraw his plea, Riddle does not attempt to assert innocence. Rather, he revisits issues that were addressed in this Court's December 23, 2011 Order, appears to object to the fact that the Government chose only to pursue charges against him rather than to treat the case as a conspiracy and charge others who were allegedly involved in the scheme, and finally, expresses disappointment with his attorney and with the initial PSR. The absence of vigorous protestations of actual innocence on Riddle's part weighs against granting his motion to withdraw his plea. *See United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (Noting that "[c]ourts have taken into account the absence of a defendant's vigorous and repeated protestations of innocence" when determining whether to permit a defendant to withdraw a guilty plea).

### C.    The Circumstances Underlying the Entry of Defendant's Guilty Plea

In his unsworn statement in support of his motion to withdraw his plea, Riddle makes somewhat contradictory arguments regarding the circumstances of his plea. First, Riddle contends that he was rushed into signing the plea agreement and ultimately was coerced to plead guilty by his attorney despite his objections. Next, Riddle argues that his decision to plead guilty was based on incomplete information and unfounded promises made by his attorney, suggesting that he did in fact plead guilty of his own volition based on the information available to him at the time, but that he would have done otherwise had he been aware of information that later came to light during the preparation of the PSR.

With regard to the latter argument, the Court cannot credit Riddle's contention that his attorney withheld information from him or made him any unfounded promises. During the change of plea hearing, the Court and the Government went through the terms of the plea agreement in detail, addressing the notes made by Riddle, and making a number of changes based on those notes. Riddle indicated that he and his attorney had discussed the nature of his charges, his possible defenses, and the penalties that could be imposed by the Court. While under oath, Riddle affirmed that he understood both the terms of the plea agreement and the rights that he would be giving up by pleading guilty.

It is not entirely clear to the Court what information Riddle believes was withheld. As to the alleged unfounded promises, Riddle claims that defense counsel assured him that the Government would ask for a downward departure pursuant to U.S.S.G. § 5K1.1 at the time of Riddle's sentencing, but that he later discovered upon receipt of the initial PSR that the Government did not plan to make a § 5K1.1 motion. There is, however, no evidence on the

13

record to show that Riddle was promised a § 5K1.1 reduction in exchange for his plea. When describing the terms of the plea agreement during Riddle's change of plea hearing, the Government stated that "it will be in the discretion of the United States Attorney's Office to determine whether the defendant has cooperated and would be eligible for a downward departure motion pursuant to 5K1.1." (Doc. 35 at 29.) Knowing that any request for departure would be discretionary, Riddle nonetheless opted to proceed with entering a guilty plea, and in doing so, Riddle affirmed that no one had made any promises not contained in the plea agreement in order to persuade him to change his plea. (Doc. 35 at 32.) Where it has been left to the Government's discretion whether to move for a § 5K1.1 reduction, a defendant's "fear that he might not receive a downward departure is . . . not a valid basis for withdrawing his guilty plea." *United States v. Ford*, 15 F. App'x 303, 308 (6th Cir. 2001) (rejecting the defendant's argument that his "plea was based on a unfulfilled and illusory promise of a lighter sentence by the government" where, despite the government's offer to make a § 5K1.1 if the defendant provided substantial assistance, there was no evidence of any guarantee that the government would move for a downward departure).

Just as the Court cannot credit Riddle's contention that his attorney withheld information from him or made him any unfounded promises, neither does the Court credit Riddle's argument that he lacked sufficient time to consider the plea agreement and was coerced into signing it by his attorney. In his unsworn statement, Riddle summarizes the events leading to his plea as follows: On December 28, 2011, following the entry of this Court's December 23, 2011 order denying in large part Riddle's pretrial motions, Riddle met with his attorney and was advised that he had three options — go to trial, plead guilty to the indictment, or sign a plea agreement drafted

14

by the Government. (Doc. 34-1 at 2.) According to Riddle, the offer to enter into a plea agreement would expire on Friday, December 30, 2011. (*Id.*) Riddle claims he initially opted to go to trial, but then on December 30, his attorney tried to convince him to sign the plea agreement. (*Id.*) Riddle spoke with his attorney at 3:45 p.m. that day. (*Id.*) After that conversation, Riddle printed the agreement, reviewed it, wrote several notes on it, and faxed it to his attorney by 5:00 p.m. (*Id.*) Though Riddle states nothing about actually signing the agreement, the plea agreement that was filed with the Court on January 3, 2012 shows a date of December 30, 2011 next to Riddle's signature, indicating that he did in fact execute the agreement prior to faxing it to his attorney. (*See* Doc. 26.) Nonetheless, Riddle claims that later that night and over the course of the weekend, he sent several emails stating that he wanted to go to trial. (Doc. 34-1 at 2.) According to Riddle, when he next spoke with his attorney on January 3, 2012, his attorney told him that there was nothing he could do at that point and that there was a plea hearing scheduled for January 9, 2012. (*Id.*)

That plea hearing was moved up to January 5, 2012, and on the day of the hearing, Riddle pled guilty in accordance with the signed plea agreement. Contrary to what Riddle now claims in his unsworn statement, during the change of plea hearing, Riddle made no mention of wanting to go to trial or of feeling that he was pushed into signing the plea agreement, despite having numerous opportunities to do so. Rather, as described in detail above, Riddle represented that he had an opportunity to review the agreement with his attorney prior to signing it, that he had voluntarily decided to enter into the agreement, and that no one had threatened him or attempted to force him to plead. Additionally, Riddle's comments and questions reflected a conscientious consideration of both the agreement and related sentencing matters. For example, Riddle

15

prompted the following exchange regarding the version of the sentencing guidelines that would

be applied to calculate a recommended sentence:

> THE DEFENDANT: . . . [S]ix years ago we signed this stuff, and I'm not
> sure how way back then deals with today, if that has any difference on the felonies
> or anything like that. Maybe that's not the question.

> MR. SMITH MONAHAN: Are you asking if it's different consequences
> in '06 than it is now in 2011?

> THE DEFENDANT: Um-hmm.

> MR. SMITH MONAHAN: I believe the consequences are exactly the
> same.
> His question was related to whether in '06 as you're aware he originally
> signed the plea agreement, whether there were different consequences now than
> there were at that time. . . .

> . . . Ms. Barry [counsel for the Government] and I discussed this briefly
> before the hearing started with Probation. In terms of guidelines, we do not
> believe the guidelines have changed during that time period.

> Probation has also reminded that if something were more favorable to him
> under the guidelines back at the time, then that guideline would apply instead of
> the current guideline.

> So I think either way we're covered . . ..

> THE COURT: Okay. And what's your understanding, Ms. Barry?

> MS. BARRY: I don't believe that there are any – any changes within the
> guidelines on that. And, again, if there were, he would get the benefit of whatever
> the guideline was at the time of the offense, I'm assuming is what we're talking
> about.

> THE COURT: Does that answer your question, Mr. Riddle?

> THE DEFENDANT: Yes.

(Doc. 35 at 11-12.) Despite Riddle's current allegations, the Court finds that Riddle had

sufficient time to review the plea agreement and ultimately decided to enter a plea of guilty of his

own volition. *See United States v. Cinnamon*, 112 F. App'x 415, 419 (6th Cir. 2004) (finding that the defendant's argument that his "plea was the product of coercion [was] belied by the care taken by the district court to ensure that [the defendant's] guilty plea was voluntarily made," and that the defendant was "bound by his statements made at the plea hearing that he was not threatened or forced in any way to plead guilty"); *United States v. Gregory*, 41 F. App'x 785, 792-93 (6th Cir. 2002) (Noting that the district court engaged the defendant in a lengthy colloquy during the plea hearing and the defendant failed at any time during that hearing to express dissatisfaction with his attorney, claim innocence, or give any indication the he did not understand the nature of the charges against him or possible sentence he faced, the court rejected the defendant's argument on appeal that his attorney failed to adequately review his plea agreement with him and that he was rushed into accepting the plea deal.).

None of the circumstances underlying the entry of Riddle's guilty plea are so unique as to justify permitting him to withdraw his plea. His alleged hesitancy and conflicting emotions prior to entering his guilty plea are unexceptional. Defendant's behavior is instead consistent with what might be expected from a defendant who faces the generally difficult decision of whether to plead guilty or leave his fate in the hands of a jury. Ultimately, Riddle chose the former, and although he may now regret that decision, the Court does not believe the circumstances underlying his plea weigh in favor of granting his motion.

**D.    Defendant's Background and Prior Criminal Experience**

Neither Riddle nor the Government addressed the fifth and sixth *Bashara* factors. Riddle has no significant criminal history or prior experience with the criminal justice system. The Court has taken Riddle's unfamiliarity with the criminal justice system into consideration when

17

evaluating the other factors. While his lack of experience may lend somewhat more credence to his allegations of confusion regarding the Court's procedures and his contention that he felt pressured to consent to the plea agreement, the Court ultimately finds that Riddle's inexperience is not sufficient to tip the balance in favor of granting his motion.

Moreover, despite Riddle's lack of experience with the criminal justice system, his nature and background otherwise mitigates against a conclusion that there exists a fair and just reason to permit him to withdraw his plea. *See United States v. Quinlan*, 473 F.3d 273, 278 (6th Cir. 2007) ("[W]hile [the defendant] did not have any prior experience with the criminal justice system, his educational background suggests that he should have understood the consequences of the plea agreement."). Riddle, who was forty-four years old at the time of his plea, is well-educated, with a Bachelor of Science degree in Organizational Management and a Master of Science degree in Human Resources Administration. He has no history of mental or emotional problems or of any drug or alcohol abuse. He has owned and operated at least two businesses during the previous ten years, and in general has been gainfully employed since 1987. There is no indication that Riddle was unable to understand that he was pleading guilty to charges carrying the potential for a substantial term of imprisonment or that he was incapable of evaluating and comprehending the consequences of pleading guilty.

### E.    Potential Prejudice to the Government

The final *Bashara* factor addresses the potential prejudice to the Government that may result from allowing Riddle to withdraw his plea. The Court need not actually consider that factor "unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *Spencer*, 836 F.2d at 240. As stated above, Riddle has not met that threshold.

However, because in this case the Government addressed the potential prejudice factor in its response to Riddle's motion, the Court briefly addresses it herein. The Government contends that it would be prejudiced by a grant of Riddle's motion because the transactions at issue in this case date back several years, and with every passing month, it becomes more difficult to pursue the case due to the changing landscape of the real estate and mortgage industry.

As discussed in the Court's December 23, 2012 order, there was a several-years long delay in charging Defendant Riddle in this case that was due to a number of factors, many of which were in control of the Government. Accordingly, the Court finds that the additional delay that would be occasioned by granting Riddle's motion would not prejudice the Government any more than the Government's own delay in charging Riddle. This factor, therefore, does not weigh in favor of the Government. At the same time, in light of the other factors discussed above, the lack of prejudice also does not give cause to grant Riddle's motion. *United States v. Ford*, 15 F. App'x 303, 310 (6th Cir. 2001) ("[W]hile prejudice to the government, or the lack thereof, is one factor to be considered in ruling on a motion to withdraw a guilty plea, a lack of prejudice does not require that the motion be granted.").

**F.  Remaining Arguments Raised by Defendant**

Having considered all the *Bashara* factors, the Court briefly addresses Riddle's remaining arguments. First, Riddle alleges that defense counsel has refused to review all of the evidence, to obtain files from the Government for Riddle to review, or to discuss the case in detail with Riddle. The Court construes that argument as an ineffective assistance of counsel claim, and the Court does not believe that there is an adequate record to review such a claim at this stage. To establish an ineffective assistance of counsel, a defendant must first show that "counsel's

19

performance was deficient," which the Supreme Court has defined to mean that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, deficiency of counsel alone is not enough to succeed on an ineffective assistance of counsel claim. The defendant must also show that counsel's "deficient performance prejudiced the defense." *Id.* As applied to a defendant's challenge to his guilty plea, the *Strickland* test requires a defendant to demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (citing *Strickland*). Riddle has not made the requisite showing in this case. First the Court does not credit Riddle's unsworn allegation that defense counsel failed to properly review the evidence or discuss the case with Riddle. Second, even if the Court were to entertain those allegations, Riddle has not shown a reasonable probability that he would have insisted upon going to trial had he or defense counsel conducted a more thorough examination of the evidence.

With his final remaining arguments, Riddle returns to issues raised in his pretrial motions. Those issues were briefed and analyzed in depth in the Court's December 23, 2011 Order, and despite Riddle's claim that crucial information was withheld from the Court, he failed to point to any new information that would warrant reconsideration of Riddle's motions.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** the Motion of Rodney Riddle to Withdraw Guilty Plea.  (Doc. 34.)

IT IS SO ORDERED.

_____
Chief Judge Susan J. Dlott
United States District Court