**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

UNITED STATES OF AMERICA,

       Plaintiff,              :          Case No. 1:11-cr-099
                                                        Also Case No. 1:13-cv-123

                                                          Chief Judge Susan J. Dlott
    -vs-                                         Magistrate Judge Michael R. Merz
                                               :

RODNEY RIDDLE,

       Defendant.

## REPORT AND RECOMMENDATIONS ON MOTION TO VACATE

       This case is before the Court on Defendant's Motion to Vacate pursuant to 28 U.S.C. § 2255 (Doc. No. 98). The case was referred to the undersigned by Chief Judge Dlott (Doc. No. 99). On the Court's Order (Doc. No. 103), the United States has filed an Answer (Doc. No. 111) and Defendant has filed a Reply (Doc. No. 115).

       Defendant pleads the following Grounds for Relief:

> **Ground One:** Due process, speedy trial clock, double jeopardy, cruel and unusual punishment.
>
> **Supporting facts:** 1. the coercive mishandling of the case (see doc#91, table contents/attch, for all documents noted)
> 1. [sic] the prosecutors coercive mishandling of the 2006 and 2007 plea agreements His failure to file the 2007 plea. and knowingly, knew that it was not a binding plea agreement but used it as if it were a binding instrument to bring an indictment against me 4 years later, using the same evidence.
> 3. The case was so old and the prosecutors held the signed plea agreement for years even until it had expired and its statement of facts was out dated, but I didn't recieve [sic] an evidentiary [sic] hearing, to look at the old 2006 and 2007 plea contracts and

1

evaluate the prosecutors claims against me signing those agreements.

4. I siggned [sic] those plea agreements many years ago. I'm being prosecuted a second time. The prosecutor didn't file the agreements of its own accord.

5. The indictment, the prosecutor told the court there was no statement of facts to the 2006 plea contract. The 2006 plea contract was the required plea contract that was agreed upon in the proffer meeting for my help. The prosecutor never signed it nor filed it with the court.(doc# 15 omnibus reply)

6. The 2012 plea agreement/hearing. my attorney tricked me to sign it. He said the judge like[s] you and wants the agreement. in court she came across to me that way, allowing massive changes by the prosecutor, to the plea agreement. not understanding nature and extent of charges(doc#35 transcript)

**Ground Two:** Fraud on the Court and grand jury

**Supporting facts:** 1.Prosecutor scrambled documents together and changed documents with intent to mislead the grand jury and the court. she stated there was no statement of the facts for the 2006 plea agreement (see docket# 15) and interchanged and retyped and corrected the 2006 statement of the facts and attached it to the 2007 plea agreement, to bring her indictment ( see doc#91 ,pg 15-19, exhibits, )

2. she fraudulantly misrepresented the 2012 plea agreement to the court at the plea colloquy (see doc#91 pg 15-19 and exhibits.

3. bringing the indictment with old expired case work. not fully disclosing to the grand jury and the judge their failures in the prosecution of the case. Not fully disclosing to the grand Jury the complexity of this case using their measured favor to get over the indiscretions of the prosecution. (see doc #91)

**Ground Three:** Coerced by counsel

**Supporting facts:** 1. Failure to review evidence,
2.failure to call for an evidentary hearing,
3.failure to look at the documents filed by the prosecution for correctness.
4.tricking me into signing the 2012 plea agreement and making sure I was confused about my rights in regards to my signing and pleading before the judge.
5.failure to advise me of the seriousness of the changes that were being made in the court room to the 2012 plea agreement.( the prosecutor added whole patterns of law to the plea agreement in the plea hearing.) see (doc#91 and attachments letter to the judge)

(Motion, Doc. No. 98, PageID 788-791.)

## Procedural History

Defendant Rodney Riddle was indicted on August 3, 2011 (Doc. No. 1). The Indictment charged Riddle with mail fraud, wire fraud, and bank fraud in connection with a scheme he devised and carried out between at least December 2001 and July 2006. The grand jury found probable cause to believe Riddle had executed the scheme with "59 properties totaling loans of approximately $6,971,870. Almost all of the 59 properties have been foreclosed totaling losses of approximately $2,617,120." *Id.* at ¶ 20.

After conducting a hearing, Chief Judge Dlott entered a forty-page Order on Riddle's Motion to Exclude Statements and to Dismiss (Doc. No. 23). In part, Riddle's Motions sought "to exclude evidence relating to statements he made to Government attorneys and agents in 2006 and 2007 and to statements he made in two plea agreements that he signed during the same period." *Id.* at PageID 199-200. Chief Judge Dlott found that the September 2006 Agreement was not enforceable against Riddle because it was never signed by the Government. *Id.* at PageID 211. After extensive analysis of relevant precedent, Judge Dlott also found "that the June 2007 Agreement is not binding on Riddle." *Id.* at PageID 217.

On January 3, 2012, the Government filed a Plea Agreement which was slightly modified and re-filed January 5, 2012 (Doc. Nos. 26, 30). Pursuant to that Agreement, Riddle appeared before Chief Judge Dlott for the plea colloquy, pled guilty to Counts 3 and 5, and was referred for a presentence investigation report (Doc. No. 29). In ¶ 16 of the Plea Agreement as accepted, Riddle expressly waived his right to appeal except if the Court sentenced him above the

3

Sentencing Guideline range, on any claim of prosecutorial misconduct, and on the Court's ruling on his statute of limitations defense (Doc. No. 30, PageID 261). Riddle represented that he was fully satisfied with the representation he had received from counsel. *Id.*, ¶ 19, PageID 262.

On March 9, 2012, Riddle filed a motion to withdraw his guilty plea (Doc. No. 34). After a hearing, Chief Judge Dlott denied the Motion in an extensive opinion discussing the claims made and the relevant precedent (Order, Doc. No. 42). On October 16, 2012, Riddle was sentenced to twenty-four months confinement on each of the two counts of conviction with the terms to run concurrently (Minutes, Doc. No. 56). Riddle filed a Notice of Appeal the same day judgment was entered, October 29, 2012 (Doc. No. 60). On February 1, 2013, Riddle filed a Notice of Collateral Attack (Doc. No. 91). On February 8, 2013, Riddle voluntarily dismissed his appeal (Doc. No. 94). A week later Riddle filed the instant § 2255 Motion (Doc. No. 98). On the Magistrate Judge's Order, the Government filed a Response to the Motion to Vacate (Doc. No. 111) and Riddle has filed a Reply, making the § 2255 Motion ripe for decision.

## Analysis

### Scope of the § 2255 Remedy

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F. 3d 491, 496-97 (6th Cir. 2003). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v.*

*United States*, 330 F.3d 733, 737 (6th Cir. 2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. §2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346 (1974), *quoting Hill v. United States*, 368 U.S. 424, 428-429 (1962); *see also Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process; mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

      Persons convicted of federal crimes have a right to appeal to the appropriate circuit court of appeals and to seek review in the United States Supreme Court. Considering the efficiency of having all issues dealt with in one proceeding, the federal courts have encouraged use of direct review to the fullest possible extent. Yackle, POSTCONVICTION REMEDIES, §108 (1981). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed

summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 5*th*, §41.7(e)(2005), *citing, Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*,* citing *Mars v. United States,* 615 F.2d 704 (6*th* Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6*th* Cir. 1993).

A defendant in a federal criminal case may waive his right to appeal so long as the waiver is valid. *United States v. Calderon*, 388 F.3d 197, 199 (6*th* Cir. 2004); *United States v. Fleming*, 239 F.3d 761, 763-64 (6*th* Cir. 2001). Only challenges to the waiver itself will be entertained on appeal. *United States v. Toth,* 668 F.3d 374 (6*th* Cir. 2012). Appeal of denial of a motion to withdraw a guilty plea is an attempt to contest a conviction on appeal and thus comes within an appeal waiver. *Toth*.

A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. *Mabry v. Johnson*, 467 U.S. 504 (1984).
"[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States,* 523 U.S. 614 (1998), citing *Reed v. Farley*, 512 U.S. 339, 354 (1994).

**Procedural Default**

In its Answer, the United States relies heavily the defense of procedural default.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule,

> federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724. The procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions. *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

In his Plea Agreement, Riddle waived his right to challenge on appeal anything but prosecutorial misconduct, a sentence above the Sentencing Guideline range, and the Court's ruling on his statute of limitations claim. (Plea Agreement, Doc. Nos. 26, 30.) That is, Riddle preserved his right to raise those three issues on appeal. However, when he did take an appeal, he then voluntarily dismissed it. Therefore the claims that he preserved for appeal by the Plea Agreement but did not pursue are procedurally defaulted. Riddle was sentenced well below the applicable Sentencing Guideline range, so that possible issue does not exist. But to the extent Riddle attempts to raise any claims of prosecutorial misconduct or the bar of the statute of limitations in his § 2255 Motion and that could have been raised on direct appeal, those claims

7

are barred by Riddle's voluntary dismissal of his appeal.

In his Reply, Riddle notes the Government's reliance on procedural default and responds

> In my 2012 Plea Agreement it says my appeal is wived [sic]. I couldn't attack my sentence under direct appeal. My not doing a direct appeal is a major theme of the prosecutor's Reply. He says I'm procedurally deficient because I failed to do a direct appeal. Thus my 2255 Petition is flaws. I disagree. According to my Plea Agreement this is the only avenue the prosecutor is willing to review my complaints.

(Reply, Doc. No. 115, PageID 870.) Riddle's reasoning seems to be that there must be some forum in which he can raise his claims and a motion to vacate must be open to him because he waived his appeal right. Riddle is mistaken; a waiver of appeal does not broaden the legal scope of rights under § 2255. Because a § 2255 motion is not a substitute for direct appeal, he was obliged to raise on appeal those claims for which he had not waived the right of appeal. He can only raise in a § 2255 motion those claims which could not have been raised on direct appeal, to wit, claims which depend on facts outside the record on appeal.

Riddle's claim of prosecutorial misconduct – that the Assistant United States Attorney "coercively mishandled" the case – is procedurally defaulted because it could have been pursued on direct appeal and was not. The same is true of Riddle's assertion that the prosecutor committed fraud on the Court and the grand jury. Prosecutorial misconduct is one of the claims on which Riddle reserved his right to appeal and the facts underlying his claim that the prosecutor(s) mishandled the case were placed of record many times before judgment was entered and the appeal taken.

Any claim Riddle might have had under the statute of limitations is also barred by his procedural default in failing to raise and pursue that claim on direct appeal. Riddle refers in Ground One to the "speedy trial clock." If this is a reference to the statute of limitations defense,

8

it is barred on the basis just stated. If Riddle is in fact referring to a failure to bring him to trial in an appropriately prompt manner after indictment, the docket shows that most of the time between indictment and plea was consumed considering motions filed by Riddle. In any event, a failure to bring the case to trial within the time limited by the speedy trial statute was waived when it was never raised prior to judgment.

Riddle also claims that his eventual conviction is barred by the Double Jeopardy Clause. The Double Jeopardy Clause of the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Riddle claims that he was previously prosecuted for the crimes for which he was eventually convicted, but the facts do not support his claim. He was **investigated** for federal crimes in 2006-2007, threatened with prosecution, and eventually signed a cooperation agreement. But no formal charges were ever filed against him until 2011. The key question is when jeopardy "attaches," when a defendant is actually placed in jeopardy. Jeopardy attaches in a jury trial when the jury is sworn. *Crist v. Bretz*, 437 U.S. 28 (1978). It attaches in non-jury trials when the court begins to hear evidence. *Serfass v. United States*, 420 U.S. 377, 388 (1975). Jeopardy attaches to a guilty plea upon the court's acceptance of the guilty plea agreement. *United States v. Ursery*, 59 F.3d 568, 572 (6th Cir. 1995), *reversed on other grounds*, 518 U.S. 267 (1996), *citing United States v. Smith,* 912 F.2d 322, 324 (9th Cir. 1990); *United States v. Kim*, 884 F.2d 189 (5th h Cir. 1989); *Fransaw v. Lynaugh*, 810 F.2d 518 (5th Cir. 1987). But none of these three events happened prior to Chief Judge Dlott's acceptance of the guilty plea in

January, 2012. As the Government's counsel acknowledges, the Government's handling of the case, leaving Riddle threatened with prosecution for five years until the statute of limitations had almost run, obviously caused an emotional rollercoaster, but it does not amount to a cognizable claim of double jeopardy. And again any Double Jeopardy claim could have been raised on direct appeal and is thus barred by Riddle's waiver of appeal.

Riddle's claim of cruel and unusual punishment is also barred by procedural default. No such claim was made before the trial court. Had the record supported such a claim (and all the facts on which Riddle relies were of record), it was the sort of claim which had to be brought on direct appeal. But as to any cruel and unusual punishment claim, Riddle waived his appeal right. Moreover, there is no merit to the claim. Riddle was given a very substantial downward departure from the Sentencing Guideline range. He cites no Supreme Court law and none is known to this Magistrate Judge which would suggest that a two-year sentence for wire fraud and bank fraud causing more than a million dollar loss is cruel and unusual punishment.

Riddle's Ground Three is that he was coerced by counsel into pleading guilty. This is the same claim he made when he sought the first time to withdraw his guilty plea (Doc. No. 34). Chief Judge Dlott held a hearing on that motion and elicited evidence from Riddle which ultimately was unpersuasive. The findings of fact made in her Order denying that Motion are dispositive of this claim (Doc. No. 42).

A guilty or no contest plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt. *Menna v. New York,* 423 U.S. 61 (1975). Chief Judge Dlott meticulously followed Fed. R. Crim. P. 11 in taking Riddle's guilty plea pursuant to the 2012 Plea Agreement. She then considered his claims of coercion and ineffective assistance of counsel in the hearing on his Motion to Withdraw and found them

wanting.

The Motion to Vacate should be denied with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

July 22, 2013.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).