IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

       Plaintiff,                        :          Case No. 1:11-cr-099
                                                 Also Case No. 1:13-cv-123

                                                 Chief Judge Susan J. Dlott
     -vs-                                     Magistrate Judge Michael R. Merz
                                        :

RODNEY RIDDLE,

       Defendant.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant's Objections (Doc. Nos. 127, 128) to the Magistrate Judge's Reports and Recommendations (Doc. Nos. 116, 117). Chief Judge Dlott has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Order, Doc. No. 129).

**Motion to Withdraw Guilty Plea and Dismiss Case (Doc. No. 71)**

On December 13, 2012, Defendant Rodney Riddle filed a *pro se* Motion to Withdraw his Guilty Plea and Dismiss the Case (Doc. No. 71). The Magistrate Judge recommended denying this Motion without prejudice as improperly filed because Riddle was represented by appointed counsel at the time he filed the Motion (Report and Recommendations on Motion to Withdraw Plea, Doc. No. 116).

1

In his Objections Riddle asserts the Motion was actually presented to Chief Judge Dlott by emailing it to her assistant on February 15, 2012 (Doc. No. 127, PageID 919). Upon inspection, Doc. No. 71 consists of a cover page which has the Clerk's date stamp of December 13, 2012, and states that it is a "[]etter from Rodney Riddle which was sent to judge in or about Feb. 15, 2012. The judge had a hearing, the transcript is available. Notice of Filing Supplemental Information 'Letter to the Judge.'" Following this cover page are eight numbered single-spaced pages from Riddle addressed to Chief Judge Dlott which appear to be the February 2012 email referred to. The last page of the document is a Certificate of Service dated December 13, 2012 (PageID 526).

Exhibit B to the Objections is an eleven-page transcript of a hearing before Chief Judge Dlott on March 5, 2012, in which she acknowledges her assistant had received an email from Riddle asking for new counsel and to withdraw his plea (Objections, Doc. No. 127-2, PageID 929-30). Judge Dlott noted "nothing has been formally filed" and "it's not a filing with the Court." *Id.* at PageID 930. After some discussion about whether Riddle wanted Smith-Monahan to continue as his attorney, Smith-Monahan indicated he would file a motion to withdraw the plea if instructed to do so by Riddle. He was given until March 9, 2012, to file the motion. *Id.* at PageID 937. Never during the course of the hearing did Riddle request that Smith-Monahan be replaced.

On March 9, 2012, Smith-Monahan filed the promised motion (Doc. No. 34) and Chief Judge Dlott later denied it (Doc. No. 42). Riddle immediately moved *pro se* for reconsideration and for a new attorney (Doc. No. 44). Judge Dlott denied those Motions on the record in open court on July 27, 2012 (Minute Entry, Doc. No. 47). The Court imposed sentenced on October 16, 2012 (Doc. No. 56) and entered judgment shortly thereafter (Doc. No. 57). Through Smith-

Monahan, who was still representing him, Riddle appealed on October 29, 2012 (Doc. No. 60). Smith-Monahan sought leave to withdraw and the court of appeals replaced him with Jeffrey Nunnari (Doc. No. 65). Later the court of appeals allowed Nunnari to withdraw and appointed Christopher Bazeley to represent Riddle (Doc. No. 81).

Chief Judge Dlott made it very clear at the hearing on March 5, 2012, that the email letter which forms the substance of the Motion to Dismiss (Doc. No. 71) had not been formally filed with the Court. She gave Riddle every opportunity to say in that hearing whether he wanted Smith-Monahan removed and Riddle did not say so. Instead, Riddle acquiesced in the process whereby Smith-Monahan would remain in the case and file a Motion to Withdraw Plea by March 9, 2012. Smith-Monahan did that and Chief Judge Dlott ruled on that Motion. Riddle was never thereafter without appointed counsel and he had counsel when he filed the instant Motion.

These facts demonstrate conclusively that Riddle's Motion to Withdraw Plea (Doc. No. 71) was not filed until December 13, 2012, and that it was filed *pro se* while Riddle had counsel. The request to withdraw plea which Riddle emailed to Chief Judge Dlott is essentially the same document. On that basis it is again respectfully recommended that the Motion be denied without prejudice because improperly filed.

**Motion to Vacate Under 28 U.S.C. § 2255**

Riddle moved to vacate his conviction under 28 U.S.C. § 2255 raising three Grounds for Relief (Doc. No. 98). Having considered the Government's Answer (Doc. No. 111) and Riddle's Reply (Doc. No. 115), the Magistrate Judge filed a Report recommending the § 2255 Motion be denied with prejudice (Doc. No. 117).

3

The Government argued that Riddle had procedurally defaulted on all of his Grounds for Relief because he had filed but then voluntarily dismissed his appeal. That is, when Riddle pled guilty, he expressly waived his right to appeal except for prosecutorial misconduct, a sentence above the Sentencing Guideline range, and the Court's ruling on his statute of limitations claim. (Plea Agreement, Doc. Nos. 26, 30.) Thus, the Government argued, all his claims were either barred by the waiver of appeal or by dismissing the appeal that was filed. The Report accepted that argument (Report, Doc. No. 117, PageID 886-889). Riddle also made a Double Jeopardy claim which the Report rejected. *Id.* at PageID 889-890. His claim of cruel and unusual punishment was rejected because it had never been made in the trial court. *Id.* at PageID 890. His claim that he had been coerced into pleading guilty was rejected on the basis of the same facts Chief Judge Dlott found in rejecting the Motion to Withdraw Plea made by Smith-Monahan. *Id.*

Riddle has made a series of Objections which will be considered seriatim.

**First Objection:** Riddle first objects that his conviction is barred by the statute of limitations (Objections, Doc. No. 128, PageID 948). This claim is procedurally defaulted: Riddle reserved the right to challenge the Court's statute of limitations ruling on appeal, but he dismissed his appeal without pressing that issue.

**Second Objection:** Riddle alleges that he cannot have defrauded the bank listed in Count 5 because it was out of business at the time of the indictment and no one from the bank could have testified that it was FDIC insured (Objection, Doc. No. 128, PageID 948-49). This claim is nowhere made in the § 2255 Motion.

**Third Objection:** Riddle objects that his guilty plea was unintelligent and should be voided (Objections, Doc. No. 128). The Court has denied the only properly-filed motion to withdraw

4

plea.

**Fourth Objection:**    Riddle claims he is actually innocent because First Franklin "was not a financial institution" but rather a "lending institution."  (Objections, Doc. No. 128, PageID 951.) When he pled guilty, Riddle admitted committing bank fraud by defrauding lending institutions (Plea Agreement, Doc. No. 30).  He now attempts to challenge the facts underlying his conviction without any proof and without having succeeded in his attempt to withdraw his plea. His Exhibit E, which appears to be a copy of part of the United States Code, does not prove there is a distinction between financial institutions and lending institutions as he claims, or that First Franklin, whatever its relation to this case, is one or the other.

Paragraph 1 of the Plea Agreement provides Riddle will plead guilty to Counts Three and Five charging "wire fraud affecting a financial institution in violation of 18 U.S.C. § 1343 and bank fraud in violation of 18 U.S.C. § 1344 arising from defendant's participation in a mortgage fraud loan scheme where the defendant provided fraudulent information to lending institutions in order to secure loans." (Doc. No. 30, PageID 254.)  That portion of § 1343 pertaining to "financial institutions" had not been amended to change that definition or add anything about "lending institutions" since 1994.   Section 1344 also speaks of "financial institutions," not "lending institutions."

In Exhibit E Riddle attaches a copy of 18 U.S.C. § 20, the definition of financial institution for purpose of federal criminal law.  By placing an asterisk next to § 20(10), Riddle seems to be arguing that it is this subsection which would make defrauding First Franklin criminal, but that section was not added until May 20, 2009, long after Riddle committed the acts for which he was prosecuted.

The Statement of Facts on which the conviction was based does not anywhere mention

5

First Franklin. It contains an admission that some of the "lending institutions" which Riddle defrauded were insured by the FDIC. Even if First Franklin was not FDIC insured in 2003, that does not negate this particular admission. As part of this Objection, Riddle attempts to revive a statute of limitations argument (PageID 952), but he waived any such argument when he dismissed his appeal.

**Fifth Objection:** In his Fifth Objection, Riddle complains of ineffective assistance of trial counsel Richard Smith-Monahan. He objects that the Report does not mention "my rights as to ineffective assistance." (Objections, Doc. No. 128, PageID 953-54.)

Riddle's Third Ground for Relief is that he was "coerced by counsel." (Motion, Doc. No. 98, PageID 790-91.) The Report reads this as a claim that Riddle was coerced by Smith-Monahan into pleading guilty. The Report also notes that was the subject of the Motion to Withdraw Guilty Plea which Chief Judge Dlott heard and rejected on the merits.

Riddle's claim of ineffective assistance of trial counsel as he presents it in his Objections is that (1) Smith-Monahan did not go over the investigative files with him, (2) he pled to charges which are not criminal acts (Count 3), (3) he did not receive an evidentiary hearing "for the 2007 plea contract," and the prosecutor made 'unkept promises,' (4) Smith-Monahan did not inform Riddle of his rights "before, during, or after my change of plea hearing such that he did not know what he could require of the prosecution, and (5) "other things which I have confronted the Court with." (Objections, Doc. No. 128, PageID 953.)

The Government also read the Motion as raising a claim of ineffective assistance of trial counsel with these five sub-claims (Answer, Doc. No. 11, PageID 855-56). The Magistrate Judge proceeds here to consider the claim in those terms.

6

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142

7

F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Because of the heightened requirement for showing a deficiency in performance, mere conclusory allegations of ineffective assistance are not sufficient to state a constitutional claim. *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012).

Based on this standard, Riddle has not shown Smith-Monahan was ineffective.

He claims that they did not "review the investigative files," but he has failed even to allege what difference that would have made in the final outcome of the case. Riddle received a twenty-four month sentence when just the counts he pled to authorized, as he acknowledged in the Plea Agreement, a sentence of sixty years imprisonment. If he is claiming that something in the "investigative files" would somehow have entitled him or swayed the Court to give him a lesser sentence, he does not say what that is. A defense attorney of course has a duty to review with his or her client the evidence the Government intends to introduce that has been produced in discovery. If that duty is breached, however, the defendant is not entitled to relief unless he can show some prejudice, which Riddle has not.

Riddle claims Smith-Monahan allowed him to pled guilty to charges which are not criminal acts, referring to Count 3 of the Indictment. Count Three of the Indictment charges that on or about June 13, 2002, regarding a property at 3404 Ninann Court in Cincinnati, Ohio, Riddle "did transmit and caused to be transmitted by means of wire communications in interstate commerce the sounds and signals of electronic transmissions used to wire loan proceeds from the lending institutions, including First Franklin, to the title companies, including Jets Title, which affected financial institutions, including National City." (Indictment, Doc. No. 1, PageID 6.) To the extent this claim is a reprise of Riddle's assertion that First Franklin does not "count"

8

because 18 U.S.C. § 20 was not amended until after his conduct, he is wrong: National City Bank was a financial institution within the meaning of that statute.

Riddle claims he "did not receive an evidentiary hearing for the 2007 plea contract." That claim is contradicted by the record. Riddle received full consideration from Chief Judge Dlott on his claims about the 2007 Plea Agreement and a decision on that claim on the merits. He makes no showing that he was entitled to a fuller hearing or that Smith-Monahan was somehow responsible for his not getting one.

As for Riddle's claim that Smith-Monahan "did not advise me of my 'rights' before, during, or after my change of plea hearing," the claim is completely conclusory. What rights? At what time? Riddle's plea colloquy is transcribed at Doc. No. 35. In it, Riddle acknowledges to Chief Judge Dlott that Smith-Monahan has explained the charges and any possible defenses. *Id.* at PageID 280. He indicated he believed Smith-Monahan was fully informed about the facts and that he was satisfied with the representation he had received. *Id.* at PageID 283. Judge Dlott explained at length the rights Riddle was giving up by pleading guilty. *Id.* at PageID 292-94. The Plea Agreement was also reviewed in detail in open court. As to any claim about promises made by the prosecutor which have not been kept, Riddle told Chief Judge Dlott under oath that there were no promises or assurances not in the Plea Agreement. *Id.* at PageID 307. After the Assistant United States Attorney read the elements of Count Three, Riddle agreed that he was guilty of each one of them. *Id.* at PageID 308.

Finally, Riddle's fifth sub-claim that there are other things about the representation, that also is completely conclusory.

Riddle is not entitled to relief on his claim of ineffective assistance of trial counsel.

9

**Sixth Objection:** In his Sixth Objection, Riddle makes various claims under the label "due process."

First, Riddle claims he signed a "'plea' with the Government giving up many of my valuable rights. The Government did not sentence me in accordance with our agreement." The only binding Plea Agreement in this case is the one signed and filed January 3, 2012 (Doc. No. 26). That Plea Agreement provides that Riddle can be sentenced to up to sixty years imprisonment, but he only received two years. What promise did the Government make in the Plea Agreement that was not kept? Riddle does not say.

Second, Riddle claims "[t]he PSR Report did not agree with the Plea Agreement and the Sentencing Guideline imprisonment range was 41 to 51 months (Sentencing Tr., Doc. No. 64, PageID 434). The Probation Department recommended a sentence of 41 months. *Id.* at PageID 436. However, Chief Judge Dlott departed from the Guidelines and imposed a sentence seventeen months below the Guideline range. Although she may have resolved some of the disputes about the content of the PSR against the way Riddle had argued them, she ultimately imposed a sentence nearly one-half what the Probation Officer recommended. In any event, a claim that the Sentencing Guideline range was not properly calculated is not cognizable in a § 2255 proceeding. Mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

Not every misstep in the criminal process is a violation of the Due Process Clause of the Fifth Amendment. Riddle has presented no constitutional due process claims.

**Conclusion**

Based on the foregoing analysis, it is again respectfully recommended that the Motion to Withdraw Plea and Dismiss (Doc. No. 71) and the Motion to Vacate Judgment (Doc. No. 98) be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

September 11, 2013.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).